Shounak S. Dharap, State Bar No. 311557
service@arnslaw.com, ssd@arnslaw.com
Katherine A. Rabago, State Bar No. 333374
kar@arnslaw.com
Christine M. Start, State Bar No. 273251
cms@arnslaw.com
**ARNS DAVIS LAW**
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Anthony L. Label, State Bar No. 205920
al.team@veenfirm.com
Theo Emison, State Bar No. 209183
t.emison@veenfirm.com
Steven A. Kronenberg, State Bar No. 215541
al.team@veenfirm.com
**THE VEEN FIRM, P.C.**
20 Haight Street
San Francisco, CA 94102
Tel: (415) 673-4800
Fax: (415) 771-5845

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| VALERIE RASKIN, on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAUSCH & LOMB, INC. and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:24-cv-06442-RFL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1. Violation of Cal. Bus. Prof. Code §§ 17200, *et seq*.<br><br>DEMAND FOR JURY TRIAL |

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and all others similarly situated, brings this action against Defendant Bausch & Lomb, Inc. and Does 1 through 10. Plaintiff alleges, upon information and belief, the investigation of counsel, and the facts that are a matter of public record, as follows:

## JURISDICTION AND VENUE

1. Jurisdiction and venue are proper in this Court because, *inter alia*, Plaintiff purchased PreserVision in San Francisco County—that is, the occurrence that gave rise to the claims herein was within this County.

## PARTIES

2. Plaintiff Valerie Raskin is a resident of San Francisco County, California. She purchased and consumed PreserVision AREDS 2 ("PreserVision"), a product manufactured, distributed, and/or sold by Defendants, in San Francisco County. Plaintiff suffered serious, disabling, and permanent side effects from PreserVision that have greatly impacted her quality of life and ability to function independently. At no time did any Defendant ever warn Plaintiff of the serious and disabling potential side effects associated with PreserVision. If the product had included a warning about the potential health effects of PreserVision suffered by Plaintiff, Plaintiff would not have purchased it.

3. Defendant BAUSCH & LOMB, INC. ("B&L") is a New York corporation with its principal place of business in Rochester, New York. B&L is the manufacturer of PreserVision, and it markets and sells its product in California.

## CLASS ACTION ALLEGATIONS

4. Plaintiff brings this action as a class action pursuant to Code of Civil Procedure 382 to include:

> All California residents who purchased the product PreserVision AREDS 2 anytime from May 20, 2020 to the present.

Excluded from this class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and affiliated companies; class counsel and their employees; and judicial officers and their immediate families as court staff assigned to his case.

5. Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or at class certification.

6. The members of the Class are so numerous that joinder of all members would be impracticable. The Class incudes thousands of individuals across the state.

7. There are questions of law and fact common to the members of the Classes that predominate over any questions affecting only individual members, including, without limitation:

- Whether Defendant failed to disclose adverse side effects of PreserVision;
- Whether Defendant's failure to disclose was likely to deceive the public;
- Whether Defendant's failure to disclose adverse side effects on PreserVision's label was misleading, fraudulent, deceptive, or unfair under the Unfair Competition Law;
- The appropriate measure and amount of restitution; and
- The type and form of injunctive relief.

8. Plaintiff brings claims that are typical of the claims of the members of the Class and arise out a common course of conduct. Plaintiff and Class Members were damaged by the same wrongful conduct—Defendant's fraudulent and unfair business practices regarding the labelling and sale of PreserVision.

9. Plaintiff will fairly and adequately protect the interests of all members of the Class and has retained attorneys experienced in class action and complex litigation. Plaintiff has no interests antagonistic to those of the Class and is not subject to any unique defenses.

10. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

- The Class is readily definable;
- A class action will eliminate the possibility of repetitious litigation;
- It is economically impractical for any or all of the members of the Class to prosecute individual actions; and
- A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

11. Plaintiff does not anticipate any difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

12. B&L originally introduced PreserVision to the market in 2010. PreserVision is a nutritional supplement that contains vitamins and high dose levels of zinc. It is intended to prevent and/or slow the progression of age-related macular degeneration.

13. By design, a daily dose of PreserVision contains 80mg of zinc. The Recommended Dietary Allowance for zinc is 8mg per day for women. PreserVision's daily dose of 80mg is over 700% of the Recommended Dietary Allowance.

14. Zinc plays a crucial role in the human immune system, as well as in protein synthesis and wound healing. It is highly concentrated in the eye, suggesting that zinc plays a crucial role in eye health—hence its inclusion in PreserVision. Zinc is absorbed in the small intestine, via a protein called metallothionein, which binds various heavy metals and helps regulate their level in the body.

15. Copper also binds to metallothionein. Copper plays a critical role in various neurological processes and is necessary for neurotransmitter synthesis (and brain function), as well as the formation and maintenance of myelin—the protective coating that sheathes nerve fibers and ensures electrical signals are properly conducted along the nerves.

16. When zinc intake is high, the body responds by increasing production of metallothionein. This is so that the metallothionein can bind to the zinc, allowing it to be stored in a non-toxic form that is ready to be utilized wherever needed.

17. However, metallothionein has a higher binding affinity to copper than zinc, which means it more readily binds to copper than it does to zinc. So when the high zinc intake triggers the creation of more metallothionein, that metallothionein more readily binds to copper, and in greater amounts. Once bound to copper, metallothionein keeps the copper in "storage" within the intestinal cells, rather than allowing it to be absorbed into the bloodstream, thus reducing the amount of bioavailable copper in the body. When the intestinal cells are shed through normal metabolic processes, the copper is shed as well, leading to an overall copper deficiency.

18. This problem can only be fixed by decreasing zinc levels to prevent the creation of excess metallothionein. Because of metallothionein's higher binding affinity to copper, even an increase in copper through supplementation does not remedy the situation, as the increased amount of metallothionein triggered by the zinc intake continues to preferentially bind to the copper.

19. As B&L knew or should have known, and as was known within the scientific community, at all relevant times: (i) excess supplementation with zinc was known to cause copper deficiency; (ii) copper deficiency was known to cause copper deficiency myelopathy, a potentially debilitating

neurological syndrome clinically characterized by signs and symptoms related to posterior column dysfunction, gait imbalance, peripheral neuropathy, sensory ataxia, and progressive numbness in the extremities, among other disabling signs and symptoms; and (iii) excess zinc consumption was known to be one of the leading causes of copper deficiency myelopathy.

20. In an apparent effort to reduce the risk of copper deficiency and associated copper deficiency myelopathy due to the high levels of zinc in PreserVision, in 2013 B&L changed the PreserVision formula to include 2mg of copper in PreserVision's daily dose. Unfortunately, an increase in oral copper intake is ineffective in restoring the appropriate zinc-copper balance in the presence of excess oral consumption of zinc. It follows that an increase in oral copper intake is also ineffective in preventing the development of copper deficiency myelopathy and its associated array of debilitating symptoms.

21. From August 12, 2020 (at a minimum) through present, B&L Canada admitted on their website via a companion PreserVision product: PreserVision Eye Vitamin and Mineral Supplement Omega-3 Formula, that they are aware that "Zinc supplement can cause a copper deficiency" and noticed consumers of this "[k]nown adverse reaction" below its list of medicinal ingredients and directions for use.

22. Though B&L knew or should have known of the risks associated with consumption of excess zinc, B&L failed to disclose any risks associated with excess zinc consumption to Plaintiff or other consumers. B&L does nothing to warn consumers about the PreserVision risks on its website, on the PreserVision packaging or labels, or anywhere else. Specifically and without limitation, B&L failed to provide any warning to Plaintiff or other consumers that:

- The Recommended Dietary Allowance of zinc for women is 8mg per day.
- PreserVision contains more than 700% of the Recommended Dietary Allowance for zinc.
- Excess zinc consumption can cause copper deficiency and copper deficiency myelopathy.
- Excess zinc consumption is the leading cause of copper deficiency myelopathy.
- Copper deficiency myelopathy can have debilitating, disabling, life-altering and permanent effects.

23. Beginning July 2018, Plaintiff began purchasing and taking PreserVision, as recommended

FIRST AMENDED CLASS ACTION COMPLAINT 4
4

by the label on the packaging. Plaintiff purchased the PreserVision at a Walgreens store in San Francisco. As recommended by the label on the packaging, Plaintiff took 2 capsules daily, one in the morning and one at night, consuming the full 80mg dose of zinc seven days a week. Plaintiff continued to purchase and consume 2 PreserVision capsules daily well into the year 2022, a period of almost four years. Despite telling Plaintiff to take 2 capsules daily, the label did not warn her of the potential health risks associated with consumption of the recommended dosage.

24. As a result of a severe copper deficiency caused by excess zinc consumption associated with PreserVision, Plaintiff developed copper deficiency myelopathy. Her symptoms began in or about the summer of 2021 and were progressive, severe, and disabling. Her progressive symptoms included and continue to include, without limitation: gait ataxia (a disorder that affects the ability to coordinate movements needed for normal walking resulting in poor balance, unsteady walking, clumsiness and falls), distal weakness in her arms, proximal weakness in her legs, numbness in her extremities and buttocks, and sensory deficits in her abdomen.

25. On May 23, 2022, Plaintiff's treating neurologist at UCSF informed her that the cause of her copper deficiency myelopathy and all its associated symptoms was excess zinc consumption from the PreserVision supplement Plaintiff was taking to prevent macular degeneration. This was the first time that Plaintiff was made aware that the excess zinc consumption from the PreserVision supplement caused her to develop copper deficiency myelopathy and all of its associated symptoms. As soon as she was made aware that PreserVision was the cause of her copper deficiency myelopathy, she immediately stopped purchasing and consuming the product.

26. Had Defendant disclosed the risks of PreserVision on its labelling or packaging, Plaintiff would not have purchased and used the product. The risk of harm and harmful consequence of Plaintiff spending money on a product that caused her to develop copper deficiency myelopathy and all of its debilitating associated symptoms far outweighs the utility advertised to prevent and/or slow the progression of age-related macular degeneration.

//

//

//

# FIRST CAUSE OF ACTION
Unfair and Fraudulent Business Acts and Practices
(Bus. & Prof. Code, §§ 17200, *et seq*.)

27. Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

28. Business & Professions Code sections 17200 *et seq*. prohibits acts of "unfair competition" which is defined by Business & Professions Code section 17200 as including "any unlawful, unfair or fraudulent business act or practice."

29. Defendant's labels on PreserVision failed to disclose or warn that it posed significant risks of substantial physical injury resulting from the use of PreserVision, including by stating:

- A dose of PreserVision contains orders of magnitude more than of the Recommended Dietary Allowance for zinc.
- Excess zinc consumption can cause copper deficiency and copper deficiency myelopathy.
- Excess zinc consumption is the leading cause of copper deficiency myelopathy.
- Copper deficiency myelopathy can have debilitating, disabling, life-altering and permanent effects.

30. Defendant's conduct was unfair and unconscionable in that it included (1) the manufacture and sale of a product with a heightened propensity to cause physical injuries and (2) omissions of material fact concerning the characteristics and safety PreserVision that offended public policy; was immoral, unethical, and oppressive; and caused substantial harm that greatly outweighs and utility from the conduct.

31. Defendant's conduct was fraudulent and deceptive because the omissions at issue were likely to, and in fact did, receive reasonable consumers, including Plaintiff. Reasonable consumers, including Plaintiff, would have found it material to their purchasing decisions that PreserVision posed unreasonably risks of substantial bodily injury resulting from its consumption. Knowledge of these facts was a substantial factor in Plaintiff's and Class Members' decisions to purchase PreserVision.

32. Defendant's conduct actually and proximately caused Plaintiff and Class Members to lose money. Without Defendant's unfair and fraudulent conduct, Plaintiff and Class Members would

not have purchased PreserVision or would have paid less for it. Plaintiff, on behalf of herself and on behalf of the Class, seeks restitution, injunctive relief, attorneys' fees, and all other relief allowable under the law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     An order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

B.     For restitution and disgorgement to the extent permitted by applicable law;

C.     For an order enjoining Bausch & Lomb from continuing to engage in the conduct described herein;

D.     For pre-judgment and post-judgment interest;

E.     For an award of attorneys' fees, costs and expenses as authorized by applicable law;

F.     For such other and further relief as this Court may deem just and proper; and

G.     For trial by jury on all causes of action so triable.

Dated: October 10, 2024

Shounak S. Dharap
**ARNS DAVIS LAW**
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888

*Attorneys for Plaintiffs*